ARMSTRONG, Judge.
Intervenor, the Garden District Association (the Garden District), appeals the trial court’s judgment granting an injunction requested by petitioners, Maria and Edgar Villavicencio, ordering the City of New Orleans to issue an alcoholic beverage permit to operate a bar and lounge at 2604 Magazine Street.
In December of 1978, Orest Pena, owner of the property located at 2604 Magazine Street, entered into a lease agreement with Raymond Gifford for the operation of a bar to be known as the “Latin American Bar”. This lease agreement was extended three times but each successive lease contemplated the continued operation of the bar. The alcoholic beverage licenses were always applied for by and issued to the lessee, Gifford, through December 1986. No alcoholic beverage license was applied for or issued to Gifford in 1987. Pursuant to Gifford’s default on the lease agreement in August and September of 1987, Pena and Gifford mutually agreed to terminate the lease agreement, whereupon Pena sold the building to the Villavicencios. On September 30, 1987 Pena sold the building to the Villavicencios. In the meantime on September 18, Maria Villavincencio applied for an alcoholic beverage license. On October 14,1987, fourteen days after Pena sold the building to the Villavicencios, the City of New Orleans mailed a letter to Pena at an old address, (Pena now resides in Florida), notifying him that the alcoholic beverage permit had expired at the Latin American Bar.
In a letter dated November 6,1987, some forty-nine days subsequent to the Villavi-cencios’ application, the Collector of Revenue of the Department of Finance, notified Maria Villavicencio that her application was denied for failure to meet the requirements of section 5-45.1 of Ordinance No. 828 M.C.S. as amended, known as the Code of the City of New Orleans; in that the bar was located in a residential zoning district. The Villavicencios timely appealed the decision of the Finance Department to the New Orleans Alcoholic Beverage Control Board, (ABC Board). The ABC Board approved, with a vote of six members in favor and one abstention, the motion denying the appeal for the reason that any operation was unlawful due to the failure to have a valid alcoholic beverage permit and that Orest Pena, as owner, should have known that the bar was operating illegally because of his association with and ownership of bars and because he was a former holder of permits and because of his presence on the premises during the year of 1987. The ABC Board noted that because no valid permit was in existence, Pena had the authority to repossess the property under the terms of the lease.
The Villavicencios filed a petition for injunction seeking a review of the ABC Board’s decision. Following a trial de novo, the trial court reversed the ABC Board and granted an injunction ordering the City to issue the permit to the Villavi-cencios. In its reasons for judgment the trial court wrote:
La.R.S. 26:88 provides for an annual renewal of liquor license. It further provides that failure to timely file for renewal results in a penalty. It further provides that failure to timely file gives the Commissioner the authority to suspend the right to do business.
This seems to imply that absent a suspension (there is no evidence in the record of a suspension being issued) the permitee may continue to do business.
Under this interpretation, it would seem that the permit was still valid (subject to being charged penalties) as of the application for a permit filed on September 19, 1987.
R.S. 26:87 provides that the decision to withhold a local permit shall be made within thirty-five calendar days of the filing of the application. This decision to withhold the local permit was not made until November 6, 1987.
For these reasons the Judgment of the Department of Finance for the City of New Orleans must be reversed.
On appeal the Garden District first asserts that there was a lapse in the operation of the Latin American Bar for six months or more and Article 12, Section 12 *577 of the Comprehensive Zoning Ordinance for the City of New Orleans provides in pertinent part:
“No building or portion thereof or land used in whole or in part for nonconforming purposes according to the provisions of this Ordinance, which hereafter becomes and remains vacant for a continuous period of 6 calendar months shall again be used except in conformity with the regulations of the district in which such building or land is situated ...”
The Garden District argues that under the ordinance the Latin American Bar lost its nonconforming use status. This simply is not supported by the evidence. Mr. Pena stated in deposition that he visited the bar almost every other month between January and September of 1987, and that he sat at the bar to talk with lessee, Raymond Gif-ford, and have a drink with the patrons. Affidavits from Zetz 7-Up Bottling Co., Lucky Coin Machine Co., Inc., and numerous individuals document a continuous use as a bar or lounge. After considering such factors as payments made to New Orleans Public Service, Inc., for gas and electric utilities and payments made to the Sewerage and Water Board for water sewerage, to name two, Zoning Administrator, Paul May concluded that there was no lapse in the bar’s operation during the months of January through September of 1987. We find that the Villavicencios did not lose their entitlement to an alcoholic beverage permit because the bar lost its nonconforming use status due to an interruption in operation for six months or more.
Next, the Garden District argues that operation of the bar in 1987 without an alcoholic beverage permit constitutes an illegal use of the premises. It cites section 5-7 of the City Code:
“It shall be unlawful for any person to sell, offer for sale, import, manufacture, distill, rectify or have in possession, for sale, handling storage or distribution, either at wholesale, retail or otherwise, any alcoholic beverage or to engage in the business of dealer as herein defined without first having obtained from the Department of Finance of the city a permit to engage in such business or a temporary number as provided in Section 5-28. (C.C.S., Ord. No. 18, 537, § 3.)”
It also relies on Section 5-7.1, 5-8, 5-12 and 5-19 which clarify the scope of Section 5-7 by identifying what persons are required to obtain permits and the consequences for failing to pay the permit fees and violating the law. Based on these laws the Garden District asserts that the trial court erred in concluding that, in the absence of a formal suspension by the City, the Latin American bar may legally operate without an ABC license. It cites Article 12, Section 6 of the Comprehensive Zoning Ordinance for the City of New Orleans which provides in pertinent part:
“The casual, intermittent, temporary or illegal use of land or buildings shall not be sufficient to establish the existence of a non-conforming use ...”
The Garden District concludes that the New Orleans Municipal Code makes it clear that the operation of a bar without an ABC license is an illegal use; therefore the Villa-vicencios’ application was correctly denied. We disagree.
Article 12, Section 6 is just not applicable to this case. The Garden District fails to distinguish between the establishment of a nonconforming use and the continuation of a nonconforming use already legally established. The issue before the court concerns the continuation of a nonconforming use already established. Article 12, Section 2 of the Zoning Code provides for the discontinuance of a legally established nonconforming use and the only grounds therefor are a lapsed use of six months or more and a “make-shift” and/or “pretended” use. We have concluded that the bar maintained continuous and uninterrupted use for the first nine months of 1987. Furthermore, as was noted in the trial court’s reasons for judgment, La.R.S. 26:88 fully contemplates the operation of a bar without an ABC license because it authorizes the Commissioner to fine or suspend that bar’s right to do business. La.R.S. 26:88.[1]
*578 Finally, the Garden District argues that the trial court erred in relying on La.R.S. 26:87-88 because the renewal statute is not the appropriate statute. It cites di Giovanni v. Parish of Jefferson, 222 So.2d 590 (La.App. 4th Cir.1969) and Food Town, Inc. v. Town of Plaquemine, 174 So.2d 833 (La.App. 1st Cir.1965), writ refused 248 La. 356, 178 So.2d 653 (La.1965), in arguing that the Villavicencios did not have the right to presume that the permit would be reissued upon the passage of the thirty-five day time period. It argues that this court held in di Giovanni that La.R.S. 26:85 (reenacted as La.R.S. 26:87) was the “law governing issuance of the first permit” and because there was no filing for a 1987 permit at the Latin American Bar, the Villavicencios’ application can not be considered a renewal. In Food Town the court concluded that the town of Plaque-mine did not have a mandatory duty to issue permits despite the fact that it failed to act timely on plaintiffs application because the store where beverages would be sold was located within 300 feet of a high school. We disagree.
The September, 1987 application for an alcoholic beverage permit was intended to be a renewal for 1987. The Villavicencios argue that until the owner received notice of his lessee’s failure to renew, an application could not be made. We decline to find that Pena had knowledge of Gifford’s failure to renew nor will we infer that Gifford had knowledge any time prior to September that the bar lacked a 1987 permit. Mr. Pena’s testimony is clear that he had no reason to suspect that there was not a valid permit. Gifford had always renewed timely. Further, Pena received no official notice as required by Section 5-59 of the City Code, that the permit had expired until October 14, 1987, fourteen days after he sold the bar to the Villavicencios.
The Garden District insists that the Villa-vicencios should not be allowed to benefit from Pena’s position because they were given notice prior to their purchase of the bar that it did not have a valid alcoholic beverage permit for 1987. Regardless of whether the Villavicencios had prior notice that the bar was operating without a valid 1987 permit, from the City of New Orleans or otherwise, they are not prevented from legitimately applying to renew the alcoholic beverage permit that the bar was operating under.
Also the Food Town decision is not precedence in this area. Under the regulatory scheme promulgated by the City of New. Orleans, the city retains the authority to suspend and/or revoke a permit for violation of the zoning code. New Orleans, La., Code §§ 5-41 and 5-58.1 (1970). The First Circuit did not note any local legislation in the Food Town decision which would allow the town of Plaquemine to revoke an alcoholic beverage permit for zoning violations.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED

. La.R.S. 26:88 provides:
§ 88. Renewal of permit
*578 A.Persons holding permits under this Chapter, whether state or local, shall annually file application for renewal thereof for the ensuing year and pay the permit fees in accordance with this Chapter and the rules and regulations established by the commissioner. If a dealer fails to file the application and pay the permit fees by the date established by the commissioner, there shall be added to the fee, in addition to other penalties provided in this Chapter, a delinquency penalty of five percent if the failure is for not more than thirty days, with an additional five percent if the failure is for not more than thirty days, with an additional five percent for each additional thirty days or fraction thereof during which the failure continues. If the dealer fails to make his application by the date established by the commissioner, the commissioner may, without notice or hearing, suspend his right to do business.
B. Any dealer whose application for renewal is filed before the date established by the commissioner may continue business until issuance of the new permit, under the previous year's permit if it has not been suspended or revoked or the new permit withheld or denied.
C. Renewal permits may be withheld or denied on the same grounds and in the same manner as an original permit.